STATE OF NORTH CAROLINA v. DONTRILL LEE JONES

No. 550A94

(Filed 9 February 1996)

### 1. Criminal Law § 289 (NCI4th)— noncapital first-degree murder—continuance denied—no supporting affidavit

There was no abuse of discretion in a noncapital first-degree murder trial where defense counsel discovered the day before trial that defendant's mother and her friends had allegedly abused defendant during his childhood; moved to continue; and in support of the motion presented no affidavits but reported a telephone conversation with a psychologist in which the psychologist stated that defendant's abusive childhood might have affected his mental state at the time of the killing. Defendant's oral motion to continue, made on the date set for trial and not supported by an affidavit, did not set forth any form of detailed proof indicating sufficient grounds for further delay.

**Am Jur 2d, Continuance §§ 66, 118.**

### 2. Criminal Law § 270 (NCI4th)— noncapital first-degree murder—psychiatric evaluation denied—no error

The trial court did not err or abuse its discretion in a non-capital first-degree murder prosecution by denying defendant's request for a continuance so that another psychiatric evaluation could be performed taking into account recent allegations of childhood abuse. A psychiatric evaluation had found defendant competent to stand trial, defense counsel did not give notice that defendant's mental state at the time of the offense might be a factor in his defense until the first day of trial, and defendant neither requested a court appointed psychiatrist nor indicated the likelihood of an insanity defense. There is no indication in the record that defendant's behavior was bizarre or that the psychiatrist who evaluated defendant recommended either commitment or medication. Defendant has not brought forth any evidence that a psychiatric evaluation would have disclosed a mental condition likely to be a significant factor at trial.

**Am Jur 2d, Continuance §§ 61-63, 65, 73, 74.**

**3. Evidence and Witnesses § 2555 (NCI4th)— noncapital first-degree murder—witness's accent—not disqualified**

There was no plain error in a noncapital first-degree murder prosecution where the judge, court reporter, and defense counsel found it difficult to understand a witness due to her accent and the judge allowed the prosecution to ask leading questions to alleviate the problem. This testimony added very little to the State's evidence and did not affect the jury's verdict.

**Am Jur 2d, Witnesses §§ 755, 756.**

**4. Evidence and Witnesses § 2808 (NCI4th)— leading questions—facts previously heard—no plain error**

There was no plain error or abuse of discretion in allowing leading questions in a first-degree murder prosecution where defendant contended that an officer was asked leading questions which assumed facts not in evidence and which permitted him to testify about facts of which he had no personal knowledge, but defendant did not object to the questions or answers and a proper foundation was laid for the introduction of the facts incorporated in the questions.

**Am Jur 2d, Appellate Review §§ 614, 695, 774; Witnesses § 752.**

**5. Evidence and Witnesses § 1450 (NCI4th)— noncapital first-degree murder—victim's clothing—chain of custody**

The trial court did not abuse its discretion in a first-degree murder prosecution by admitting the victim's shirt into evidence where defendant contended that the chain of custody for the shirt was broken because a former officer was not called to testify. All of the available evidence at trial indicates that the victim was wearing the shirt when defendant shot him and the State must establish a detailed chain of custody only when the evidence offered is not readily identifiable or is susceptible to alteration and there is reason to believe that it may have been altered.

**Am Jur 2d, Evidence §§ 946, 947.**

**6. Evidence and Witnesses § 2124 (NCI4th)— noncapital first-degree murder—officer's opinion—markings on victim's clothing—gunshot stippling**

There was no error in a first-degree murder prosecution where an officer was allowed to identify markings on the victim's

clothing as gunshot stippling based on fifteen years of experience in examining crime scenes. The testimony corroborated testimony about stippling on the victim's shoulder and contradicted defendant's testimony about how far he was standing from the victim when he fired the gun.

**Am Jur 2d, Expert and Opinion Evidence §§ 300, 303.**

**Admissibility, in criminal case, of results of residue detection test to determine whether accused or victim handled or fired gun. 1 ALR4th 1072.**

7. **Evidence and Witnesses § 1274 (NCI4th)— confession— defendant's mental capabilities—officer's opinion**

There was no error in a first-degree murder prosecution where an officer was allowed to give his opinion regarding defendant's mental capabilities at the time he confessed but defendant was not allowed to introduce evidence regarding his mental capabilities. The State has the burden of establishing that a confessing defendant possesses the proper mental capacity to waive his rights and the testimony meets the standards of N.C.G.S. § 8C-1, Rule 701 in that the opinion was rationally based on the officer's perception of defendant at the time of the confession and it was necessary that the officer give his opinion to help determine whether defendant voluntarily gave the statement, a crucial fact in issue. Furthermore, although defendant contends that the jury could have improperly inferred from this testimony that defendant was also mentally capable when he shot the victim, defendant's capacity at the time of the shooting was never in issue.

**Am Jur 2d, Criminal Law § 797; Evidence § 744; Expert and Opinion Evidence §§ 164 et seq.**

**Mental subnormality of accused as affecting voluntariness or admissibility of confession. 8 ALR4th 16.**

**Sufficiency of showing that voluntariness of confession or admission was affected by alcohol or other drugs. 25 ALR4th 419.**

**Validity or admissibility, under Federal Constitution, of accused's pretrial confession as affected by accused's mental illness or impairment at time of confession—Supreme Court cases. 93 L. Ed. 2d 1078.**

**8. Evidence and Witnesses § 2908 (NCI4th)— first-degree murder—defendant's confession to third party—hearsay—admission not prejudicial**

There was no prejudicial error in a first-degree murder prosecution where an officer testified on redirect examination that defendant had told a third party that he had murdered the victim. Although the State argued that the defendant had opened the door on cross-examination by eliciting testimony that there were no eyewitnesses who could identify defendant as the killer, there is no particular fact or transaction connecting the statement of the third party, Bridget Merritt, with the testimony on cross-examination. However, the jury would have reached the same verdict without the admission of the hearsay statement.

**Am Jur 2d, Appellate Review § 758; Witnesses §§ 740, 741.**

**9. Evidence and Witnesses § 202 (NCI4th)— first-degree murder—defendant's personal and educational background—properly excluded**

There was no error in a first-degree murder prosecution where the trial court did not allow defendant to present evidence that he was incapable of forming the intent required for first-degree murder and discharging a firearm into an occupied vehicle because his mother abused him and he was a slow learner at school. Defendant failed to make any connection at trial between the alleged abuse and below-average intelligence and the crimes committed; on the contrary, the record is replete with evidence tending to rebut defendant's contentions.

**Am Jur 2d, Evidence §§ 319, 558.**

**10. Criminal Law § 610 (NCI4th)— first-degree murder—motion to dismiss—erroneously admitted evidence**

The trial court did not err in a first-degree murder prosecution by denying defendant's motions to dismiss for insufficient evidence where defendant argued that the evidence would have been insufficient but for evidentiary errors. The trial court should consider all evidence favorable to the State which is actually admitted when ruling on a motion to dismiss for insufficient evidence; the fact that some of the evidence was erroneously admitted by the trial court is not a sufficient basis for granting the motion.

STATE v. JONES

[342 N.C. 523 (1996)]

**Am Jur 2d, Trial §§ 842 et seq.**

**Consideration, in determining facts, of inadmissible hearsay evidence introduced without objection. 79 ALR2d 890.**

11. **Criminal Law § 691 (NCI4th)— first-degree murder— instructions—objections—no plain error**

There was no plain error in a first-degree murder prosecution where defendant contended that the trial court erred in its instructions to the jury and in its failure to give defense counsel the opportunity to object to the instructions out of the hearing of the jury. The trial judge asked the attorneys to approach the bench after completing the substantive charge; after a brief conference announced that both sides were satisfied; gave the final instructions and asked whether the attorneys were satisfied; and both indicated that they were. There is no statute or rule which obligates the trial judge to advise defense counsel to approach the bench for the purpose of making an objection out of the presence of the jury. Furthermore, the State presented overwhelming evidence, including defendant's own signed confession, showing defendant's guilt and the errors cited by defendant did not alter the essential meaning or intent of the pattern jury instructions.

**Am Jur 2d, Trial §§ 1079, 1459-1473.**

**Construction and effect of provision of Rule 51 of the Federal Rules of Civil Procedure, and similar state rules, that counsel be given opportunity to make objections to instructions out of the hearing of jury. 1 ALR Fed. 310.**

**When does trial court's noncompliance with requirement of Rule 30, Federal Rules of Criminal Procedure, that opportunity shall be given to make objection to instructions upon request, out of presence of jury, constitute prejudicial error. 55 ALR Fed. 726.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by Wright, J., at the 25 July 1994 Criminal Session of Superior Court, Wayne County, upon a jury verdict of guilty of first-degree murder. Defendant's motion to bypass the Court of Appeals as to an additional judgment for discharging a firearm into an occupied vehicle was allowed 30 May 1995. Heard in the Supreme Court 11 December 1995.

*Michael F. Easley, Attorney General, by Daniel F. McLawhorn, Special Deputy Attorney General, for the State.*

*Margaret Creasy Ciardella for defendant-appellant.*

FRYE, Justice.

Defendant, Dontrill Lee Jones, was indicted on 7 June 1993 for first-degree murder and discharging a firearm into an occupied motor vehicle. In a noncapital trial, the jury found defendant guilty of discharging a firearm into an occupied vehicle and guilty of first-degree murder under the felony murder theory. The trial judge arrested judgment on the underlying felony of discharging a firearm into an occupied vehicle and imposed the mandatory sentence of life imprisonment for the first-degree murder conviction.

On appeal to this Court, defendant makes five arguments. After reviewing the record, transcript, briefs, and oral arguments of counsel, we conclude defendant received a fair trial, free of prejudicial error.

The evidence presented at trial tended to show the following facts and circumstances: At approximately 8:00 p.m. on 12 April 1993, James Broughnden Jr. (the victim) drove his truck to Mary's Drive-In. He was alone. Broughnden went inside the restaurant to use the bathroom, ordered take-out dinner for himself and his family, then returned to his truck. Jackie Powers, an employee of the drive-in, took the victim's order. A short while later, Broughnden knocked on Powers' window and asked her to bring a beer to his truck. After taking the beer to Broughnden, Powers returned to the restaurant and waited for the cook to finish the order. Powers then heard two "pops," turned towards the truck, and saw someone running away. Another witness, Angeline Spencer, saw a young black man running towards her putting a gun into his pants and a white man getting out of his truck and then falling to the ground. Spencer went over to Broughnden and stayed with him until an ambulance arrived. Broughnden died from multiple gunshot wounds.

Defendant, after telling several relatives about the killing, surrendered to police the evening of the shooting. In the written statement he gave to police that night, defendant admitted he had seen Broughnden's truck at the drive-in from across the street. He walked to the restaurant and recognized the victim. Defendant further admitted that he then went behind the building and thought, "That's him.

**STATE v. JONES**

[342 N.C. 523 (1996)]

I've got to get him." He took out a .38-caliber pistol, walked around the back of the truck, and shot Broughnden twice at close range. At trial, contrary to his written statement, defendant testified he was only trying to scare Broughnden, as the victim had scared him in an earlier incident.

Defendant and Broughnden had been involved in an altercation on the evening of 21 March 1993, three weeks prior to the shooting. There is some dispute as to exactly what happened that evening. Broughnden was driving his truck down "the Block" in Goldsboro, an area known to have street-level drug dealers. Defendant was a regular on the Block, where he had been dealing drugs for approximately six months. According to defendant, Broughnden asked him if he had "a twenty of crack cocaine." Defendant handed Broughnden a "rock" of crack, which Broughnden exchanged with a fake that he tried to hand to defendant. When defendant demanded a return of the genuine crack, Broughnden drove off, dragging defendant with him for about two blocks.

Several of defendant's friends had seen the episode from a pool room and jumped into an automobile with defendant. They followed Broughnden onto the property where his mother's house is located. In the incident that ensued, John Smith, Broughnden's brother-in-law, who lives in a separate mobile home and is the owner of the property, unsuccessfully attempted to block defendant's return to the highway. Smith's daughter recorded the license plate number, and the Smiths reported the incident to the Sheriff's Department.

According to his brother-in-law's testimony at trial, Broughnden had described the initial episode which caused the argument and chase differently. In Broughnden's version, he was merely an innocent man being harassed by defendant and his friends. They had parked too close to Broughnden's truck at a gas station, and an argument ensued. There was no mention of drugs. Smith thought Broughnden's story "didn't seem right."

The trial court denied defendant's motions to dismiss made at the close of the State's evidence and again at the close of all the evidence.

[1] In his first argument, defendant contends the trial court committed prejudicial error by denying his motion to continue. On 24 July 1994, the day before the trial, defense counsel discovered that defendant's mother and her friends had allegedly abused defendant during his childhood. After obtaining this information, defense counsel

sought a continuance, which the court denied. Defense counsel asserted that she needed more time to prepare for trial and that another psychiatric evaluation taking into account the allegations of abuse would help to determine whether defendant possessed the necessary intent to commit the alleged offenses.

In support of the motion, defense counsel reported a telephone conversation she had with a psychologist the previous day. The psychologist stated that defendant's abusive childhood might have affected his mental state at the time of the killing and that defendant's response to Broughnden might have been influenced by this history of abuse. There were no affidavits presented, however. The transcript of the hearing shows the trial court had before it only a summary of defendant's psychiatric evaluation conducted at Dorothea Dix Hospital. This summary concluded that there was no evidence of mental confusion or thought disorder and that defendant was competent to stand trial. Defendant did not offer the full report into evidence, either at the hearing or at trial.

Defendant's argument raises two separate issues. First, defendant contends that the trial court's denial of the motion to continue violated defendant's constitutional right to present a defense by denying defense counsel adequate time for trial preparation. Second, defendant contends that the denial of his motion deprived him of the services of a psychiatrist to assist in his defense. We disagree with both contentions.

In deciding pretrial motions in superior court,

the judge shall consider at least the following factors in determining whether to grant a continuance:

(1) Whether the failure to grant a continuance would be likely to result in a miscarriage of justice; [and]

(2) Whether the case taken as a whole is so unusual and so complex, due to the number of defendants or the nature of the prosecution or otherwise, that more time is needed for adequate preparation . . . .

N.C.G.S. § 15A-952(g)(1), (2) (Supp. 1995). This Court has stated that

"[a] motion for a continuance is ordinarily addressed to the sound discretion of the trial court. Therefore, the ruling is not reversible on appeal absent an abuse of discretion." *State v. Smith*, 310 N.C. 108, 111, 310 S.E.2d 320, 323 (1984). However, if "a motion to con-

tinue is based on a constitutional right, then the motion presents a question of law which is fully reviewable on appeal." *Id.* at 112, 310 S.E.2d at 323.

*State v. Covington*, 317 N.C. 127, 129, 343 S.E.2d 524, 526 (1986).

Defendant contends that this alleged error amounts to a violation of his rights under the Constitution of the United States. He has failed, however, to show how the denial of his motion to continue impaired either his right to effective assistance of counsel or his right to confront the witnesses against him at trial.

This Court has recently reviewed the legal standards governing the appeal of a denial of a motion to continue:

> To establish that the trial court's failure to give additional time to prepare constituted a constitutional violation, defendant must show "how his case would have been better prepared had the continuance been granted or that he was materially prejudiced by the denial of his motion." *State v. Covington*, 317 N.C. 127, 130, 343 S.E.2d 524, 526 (1986). "[A] motion for a continuance should be supported by an affidavit showing sufficient grounds for the continuance." *State v. Kuplen*, 316 N.C. 387, 403, 343 S.E.2d 793, 802 (1986). " '[A] postponement is proper if there is a belief that material evidence will come to light and such belief is reasonably grounded on known facts.' " *State v. Tolley*, 290 N.C. 349, 357, 226 S.E.2d 353, 362 (1976) (quoting *State v. Gibson*, 229 N.C. 497, 502, 50 S.E.2d 520, 524 (1948)).
>
> . . . .
>
> . . . " '[C]ontinuances should not be granted unless the reasons therefor are fully established. Hence, a motion for a continuance should be supported by an affidavit showing sufficient grounds.' " [*State v. Cradle*, 281 N.C. 198, 208, 188 S.E.2d 296, 303,] (quoting *State v. Stepney*, 280 N.C. 306, 312, 185 S.E.2d 844, 848 (1972))[, *cert. denied*, 409 U.S. 1047, 34 L. Ed. 2d 499 (1972)].

*State v. McCullers*, 341 N.C. 19, 31-32, 460 S.E.2d 163, 170 (1995).

In *State v. Searles*, 304 N.C. 149, 282 S.E.2d 430 (1981), in circumstances similar to those of the instant case, this Court upheld the trial court's decision to deny defendant's motion to continue. The defendant in *Searles* wanted more time to locate a potential material witness. The trial court denied the continuance because the "defendant's oral motion . . . made on the date set for trial, was not supported

by some form of detailed proof indicating sufficient grounds for further delay." *Id.* at 155, 282 S.E.2d at 434.

We conclude, therefore, that the trial court did not err or abuse its discretion in failing to grant the motion for continuance. Defendant's oral motion to continue, made on the date set for trial and not supported by an affidavit, did not set forth any form of "detailed proof indicating sufficient grounds for further delay." *Id.*; *see also Cradle,* 281 N.C. at 208, 188 S.E.2d at 303. Accordingly, we reject defendant's argument on the issue of denying adequate time for trial preparation.

**[2]** We next address the issue relating to the assistance of a psychiatric expert. This Court has held that an indigent defendant has the right to an *ex parte* hearing for the purpose of having an expert appointed to aid in his defense. *State v. Ballard,* 333 N.C. 515, 522, 428 S.E.2d 178, 182-83, *cert. denied,* —— U.S. ——, 126 L. Ed. 2d 438 (1993). In the instant case, defense counsel did not specifically request an *ex parte* hearing or the appointment of a psychiatrist to assist in the defense. Rather, she argued that a new psychiatric evaluation would be useful for the defense at trial.

Defendant relies on the United States Supreme Court's decision in *Ake v. Oklahoma,* 470 U.S. 68, 84 L. Ed. 2d 53 (1985). In *Ake,* the Court held that when an indigent defendant has made a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial, the United States Constitution requires a state to provide the defendant a psychiatrist's assistance in preparing for trial. *Id.* at 83, 84 L. Ed. 2d at 66.

*Ake* is not controlling in the instant case. The Supreme Court opinion catalogued the many psychological factors involved in Ake's case:

[I]t is clear that Ake's mental state at the time of the offense was a substantial factor in his defense, and that the trial court was on notice of that fact when the request for a court-appointed psychiatrist was made. For one, Ake's sole defense was that of insanity. Second, Ake's behavior at arraignment, just four months after the offense, was so bizarre as to prompt the trial judge, *sua sponte,* to have him examined for competency. Third, a state psychiatrist shortly thereafter found Ake to be incompetent to stand trial, and suggested that he be committed. Fourth, when he was found to be competent six weeks later, it was only on the condition that he be sedated with large doses of Thorazine three times a day, during

**STATE v. JONES**

[342 N.C. 523 (1996)]

trial. Fifth, the psychiatrists who examined Ake for competency described to the trial court the severity of Ake's mental illness less than six months after the offense in question, and suggested that this mental illness might have begun many years earlier.

*Id.* at 86, 84 L. Ed. 2d at 68.

In the instant case, a psychiatric evaluation found defendant competent to stand trial. It was not until the first day of trial that defense counsel gave the trial court notice that defendant's mental state at the time of the offense *might* be a factor in his defense. Defendant neither requested a court-appointed psychiatrist nor indicated the likelihood of an insanity defense. Unlike the defendant in *Ake*, there is no indication in the record before us that defendant's behavior was bizarre before, during, or after the murder. The record does not indicate that the psychiatrist who evaluated defendant recommended either commitment or medication.

The *Ake* Court emphasized the narrowness of its holding:

A defendant's mental condition is not necessarily at issue in every criminal proceeding, . . . and it is unlikely that psychiatric assistance of the kind we have described would be of probable value in cases where it is not. The risk of error from denial of such assistance, as well as its probable value, is most predictably at its height when the defendant's mental condition is seriously in question. When the defendant is able to make an *ex parte* threshold showing to the trial court that his sanity is likely to be a significant factor in his defense, the need for the assistance of a psychiatrist is readily apparent.

*Id.* at 82-83, 84 L. Ed. 2d at 65-66.

In this case, defendant has not brought forth any evidence, even now, that a psychiatric evaluation would have disclosed a mental condition likely to be a significant factor at trial. Defendant, as the trial judge noted in specific reference to *Ake*, did not make a "threshold showing" that the report was inadequate, that it would result in an unfair trial, or that it would impede trial preparation. *State v. Parks*, 331 N.C. 649, 656, 417 S.E.2d 467, 471 (1992). We conclude, therefore, the trial court did not err or abuse its discretion. Accordingly, we reject defendant's first argument.

[3] In his second argument, defendant contends that the trial court erred in not disqualifying a witness. The witness, Jackie Powers, an

employee of Mary's Drive-In, took Broughnden's order just before he was killed. It is clear from the transcript that the judge, court reporter, and defense counsel found it difficult to understand Powers due to her accent. The judge allowed the prosecution to ask leading questions to alleviate the problem.

Defendant claims that the assistant district attorney interpreted Powers' testimony for the court. While interpretation was suggested as an alternative at the bench conference, defense counsel indicated she would object to this procedure. Defendant refers to two instances where the prosecutor used words not spoken by the witness. After reviewing the transcript, we conclude that the prosecutor resorted to leading questions rather than interpretation. If we assume for the sake of argument that the prosecutor was interpreting and that this constitutes error, we must examine this error under the "plain error" rule, since defendant did not object to the questions at trial. We have said that

[u]nder the plain error rule, a new trial will be granted for an error to which no objection was made at trial only if a defendant meets a heavy burden of convincing the Court that, absent the error, the jury probably would have returned a different verdict.

*State v. Bronson*, 333 N.C. 67, 75, 423 S.E.2d 772, 777 (1992).

Powers' testimony added very little to the State's evidence against defendant. She was unable to identify defendant and thought the "pops" she heard were caused by "kids." On cross-examination, she testified that she only knew Broughnden was in the truck when she brought him the beer but did not know if he was in the truck when he was shot. Defendant further complains that Powers' testimony that Broughnden requested his wife's meal be prepared "real nice" was prejudicial because it reflected positively on the victim's character. After a thorough review of the record, however, we conclude that none of the above testimony affected the jury's verdict. The admission of this testimony did not constitute error under the plain error standard. Accordingly, we reject defendant's second argument.

In his third argument, defendant contends the trial court committed prejudicial error in numerous evidentiary rulings. We shall consider the contentions *seriatim*.

[4] Defendant first asserts the trial court committed plain error by allowing the State to ask Officer Melvin leading questions that assumed facts not in evidence and that permitted the witness to tes-

tify to facts about which he had no personal knowledge. Defendant did not object to these questions or to Officer Melvin's answers. A review of the transcript reveals that the questions at issue incorporated. facts which had been established with the admission of photographs of the victim's body and the crime scene, as well as the testimony of Dr. Schupner, the physician on duty in the emergency room when Broughnden was taken to the hospital. The jurors, therefore, had previously heard testimony that the victim had been shot in the left shoulder and had bled from that wound. They had examined photographs showing blood in the truck's interior and on the ground next to the truck. The shirt itself was torn, stained, and had bullet holes, one of which had stippling. Thus, a proper foundation was laid for the introduction of the facts incorporated in the questions at issue: that the shirt had blood on it, that it had been torn by paramedics in an attempt to provide medical assistance, and that it had bullet holes in it.

"A ruling on the admissibility of a leading question is in the sound discretion of the trial court, and these rulings are reversible only for an abuse of discretion." *State v. Marlow*, 334 N.C. 273, 286-87, 432 S.E.2d 275, 285-86 (1993). We conclude that there was no error and that the trial judge did not abuse his discretion in allowing the questions.

**[5]** Defendant also argues that the chain of custody of the victim's shirt was broken because Officer Barnes, who at the time of trial was no longer with the Goldsboro Police Department, was not called to testify. Officer Barnes accompanied Broughnden to the hospital after the shooting and obtained the victim's shirt, which he turned over to Officer Melvin. After removing a bullet from Broughnden's body, Dr. Schupner gave the bullet to Sergeant King, the investigator on call. The police placed this bullet and the shirt in the same evidence envelope. It is unclear from the record who gave Officer Barnes the shirt.

Defendant made only a general objection to the admission of the shirt and therefore failed to make chain of custody of the shirt a disputed issue at trial. Defendant's objection was overruled. A general objection, when overruled, is ordinarily not adequate unless the evidence, considered as a whole, makes it clear that there is no purpose to be served from admitting the evidence. *State v. Adcock*, 310 N.C. 1, 18, 310 S.E.2d 587, 597 (1984). Counsel claiming error has the duty of showing not only that the ruling was incorrect, but must also provide

the trial court with a specific and timely opportunity to rule correctly. *Id.* Nonetheless, we have examined the issue as if a proper objection was made and conclude that there was no error in the admission of the shirt.

In homicide cases, a victim's clothing is admissible if its appearance throws any light on the circumstances of the crime. *State v. Sparks*, 285 N.C. 631, 636-37, 207 S.E.2d 712, 715 (1974), *death sentence vacated*, 428 U.S. 905, 49 L. Ed. 2d 1212 (1976). In *State v. Sloan*, 316 N.C. 714, 343 S.E.2d 527 (1986), the Court dealt with the issue of a lapse in the chain of custody:

> In determining the standard of certainty that is required to show that an object offered is the same as the object involved in the incident and is in an unchanged condition, the trial court must exercise sound discretion. . . . In the first place, defendant has provided no reason for believing that this evidence was altered. Based on the detailed and documented chain of custody presented by the State, the possibility that the real evidence involved was confused or tampered with "is simply too remote to require exclusion of this evidence." *State v. Grier*, 307 N.C. 628, 633, 300 S.E.2d 351, 354 (1983). Furthermore, any weaknesses in the chain of custody relate only to the weight of the evidence, and not to its admissibility.

*Sloan*, 316 N.C. at 723, 343 S.E.2d at 533 (citation omitted). The State must establish a detailed chain of custody "only when the evidence offered is not readily identifiable or is susceptible to alteration and there is reason to believe that it may have been altered." *State v. Campbell*, 311 N.C. 386, 389, 317 S.E.2d 391, 392 (1984).

In *State v. Holder*, 331 N.C. 462, 418 S.E.2d 197 (1992), this Court upheld the admission of clothing with bullet holes in circumstances very similar to the instant case. The trial court allowed testimony regarding the correspondence of the holes in the clothing, the entrance and exit wounds in the body, and the presence on the clothing of gunpowder and blood. *Id.* at 486, 418 S.E.2d at 210.

In this case, all of the available evidence at trial indicates Broughnden was wearing the shirt when defendant shot him. The shirt has a name label with the same first name as Broughnden's. Officer Barnes, who accompanied Broughnden to the hospital, gave the shirt to Officer Melvin, the evidence technician. Melvin then placed the shirt in the same evidence envelope as the bullet removed

STATE v. JONES

[342 N.C. 523 (1996)]

from Broughnden's body. Officer Melvin maintained continuous custody of the envelope up to the time of trial.

Additionally, the shirt had bloodstains and bullet holes consistent with Broughnden's wounds. Gun residue stippling found on Broughnden's shoulder indicated the gun muzzle was no more than two feet away when the gun was fired. Stippling found around the shoulder wound was consistent with stippling found on the shirt and with stippling visible in photographs taken at the crime scene and at the hospital. Furthermore, Broughnden's wife saw him putting a check in his shirt pocket when he left his home shortly before the shooting. Police found a check in the shirt pocket. Defendant made no showing that the shirt admitted into evidence was not the shirt worn by Broughnden or that anyone had altered the shirt beyond what was required during medical intervention. We conclude, therefore, that the trial court did not abuse its discretion by admitting the shirt into evidence.

[6] Defendant next contends that Sergeant King was not qualified to identify the markings on Broughnden's shirt as stippling. Sergeant King was able to identify stippling as the result of fifteen years of experience in examining crime scenes. Testimony about the stippling on the shirt was admissible since it corroborated testimony about stippling on Broughnden's shoulder and contradicted defendant's trial testimony about how far he was standing from Broughnden when he fired the gun. We conclude that the trial judge did not commit error in allowing Sergeant King's testimony about the gunshot residue stippling on the shirt to be admitted into evidence.

[7] Defendant next contends the trial court erred in allowing Sergeant King's opinion testimony regarding defendant's mental capabilities at the time defendant confessed to the shooting. Defendant asserts that since he was not allowed to introduce evidence regarding his mental capabilities, Sergeant King's opinion should not have been allowed.

The following exchange occurred at trial, without objection, regarding defendant's written statement:

Q. Now, um, during the time that he was reading that and you were explaining it to him, did he appear to be confused?

A. No. He appeared to understand every bit of it.

Q. Did he appear to be sleeping?

A.  No, ma'am.

Q.  Did he seem be, um—have his mental capabilities?

A.  Yes, he did.

Defendant's argument ignores the fact that the State has the burden of establishing that a confessing defendant possesses the proper mental capacity to waive his *Miranda* rights. In *State v. Thibodeaux*, 341 N.C. 53, 58, 459 S.E.2d 501, 505 (1995), this Court discussed the factors to be considered:

> (1) whether defendant was in custody, (2) defendant's mental capacity, (3) the physical environment of the interrogation, and (4) the manner of the interrogation. The State has the burden of showing by a preponderance of the evidence that the defendant made a knowing and intelligent waiver of his rights and that his statement was voluntary.

Sergeant King's testimony meets the standards set forth in North Carolina Rule of Evidence 701. His opinion was rationally based on his perception of defendant at the time of the confession. Furthermore, it was necessary that he give his opinion as to defendant's mental state at the time of the confession to help determine a crucial fact in issue, that is, that defendant voluntarily gave the statement to police.

Defendant further contends that Sergeant King's opinion should have been excluded because the jury could infer from the testimony that if defendant was mentally capable when he confessed, he was mentally capable when he shot the victim only hours before. As we have stated previously in discussing argument one, defendant's mental capacity at the time of the shooting was never an issue at trial. We conclude this argument has no merit.

[8]  Defendant next contends that the trial court committed prejudicial error by improperly admitting a hearsay statement into evidence. We agree with defendant that it was error to admit the statement. However, we conclude that the admission does not rise to the level of prejudicial error.

Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. N.C.G.S. § 8C-1, Rule 801(c) (1992). Hearsay is not admissible except as provided by statute or by the rules of evidence. N.C.G.S. § 8C-1, Rule 802 (1992). At trial, the fol-

lowing exchange took place on redirect between the prosecutor and Sergeant King:

Q.  Um, Officer King, you listed all of these people for the prosecutor, but none of them could independently identify Mr. Jones as the perpetrator, isn't that true?

A.  Collectively, the way most cases come out, collective witnesses in the case could indicate that Dontrill Jones committed the murder of James Broughnden. I have nobody that can independently, solely say they stood out there and watched Dontrill Jones shoot James Broughnden.

Q.  Thank you. Actually, Dontrill told someone else that he had—

A.  Yes, he did.

Q.  —murdered James Broughnden.

Ms. HOLLOWELL (defense counsel): Objection.

THE COURT: Overruled.

Q.  Before—

A.  Yes, he did.

Q.  Before he told you, didn't he?

A.  Yes. As, um, is another—the Bridget Merritt that I had spoken with. He indicated to her that he had done it.

Defense counsel's questions on cross-examination had elicited testimony that there were no eyewitnesses who could identify defendant as Broughnden's killer. On redirect, the prosecutor countered by eliciting hearsay testimony, over objection, that defendant had admitted to killing Broughnden. The State argues that defense counsel "opened the door" for the admission of the hearsay statement, but there is no "particular fact or transaction" connecting Merritt's statement with the testimony on cross-examination. *State v. Rose*, 335 N.C. 301, 337, 439 S.E.2d 518, 538, *cert. denied*, —— U.S. ——, 129 L. Ed. 2d 883 (1994); *see also State v. Ratliff*, 341 N.C. 610, 615, 461 S.E.2d 325, 328 (1995). The statement did not explain or rebut the earlier testimony. Thus, we conclude that the trial court erred in admitting Merritt's out-of-court statement.

We do not agree with defendant, however, that the error was prejudicial. Prejudicial error is shown " 'when there is a reasonable pos-

sibility that, had the error in question not been committed, a different result would have been reached at the trial.' " *State v. Wiggins*, 334 N.C. 18, 27, 431 S.E.2d 755, 760 (1993) (quoting N.C.G.S. § 15A-1443(a) (1988)). We conclude that the jury would have reached the same verdict without the admission of the hearsay statement.

[9] Defendant next contends the trial court erred in not allowing him to present evidence to the jury about his personal and educational background. Defendant argues that because his mother abused him and he was a slow learner in school, he was incapable of forming the necessary intent required for first-degree murder and discharging a firearm into an occupied vehicle. Defendant failed to make any connection at trial, however, between the alleged abuse and below-average intelligence and the crimes committed. On the contrary, the record is replete with evidence tending to rebut defendant's contentions. Indeed, during *voir dire*, defendant admitted that he was not claiming that the abuse he suffered as a child caused him to shoot Broughnden. We conclude that the trial court properly excluded defendant's personal and educational background. Accordingly, we reject defendant's final contention under his third argument.

[10] Defendant's fourth argument concerns the trial court's failure to grant defendant's motions to dismiss. Defendant contends that had the trial court not made the errors alleged in his first and third arguments, the evidence would have been insufficient to convict him of the crimes of first-degree murder under the felony murder rule and discharging a firearm into an occupied vehicle. Thus, defendant argues that the charges against him should have been dismissed for insufficiency of the evidence. We have held that the trial court did not err as to arguments one and three, with the exception of improperly admitting a hearsay statement under argument three.

When ruling on a defendant's motion to dismiss on the ground of insufficiency of the evidence, it is axiomatic that the trial court should consider all evidence actually admitted, whether competent or not, that is favorable to the State. *State v. Vause*, 328 N.C. 231, 237, 400 S.E.2d 57, 61 (1991). Thus, the fact that some of the evidence was erroneously admitted by the trial court is not a sufficient basis for granting a motion to dismiss. We conclude that the trial court did not err in denying defendant's motions to dismiss for insufficiency of the evidence. Accordingly, we reject defendant's fourth argument.

[11] In his fifth argument, defendant contends that the trial court erred in its instructions to the jury and in its failure to give defense

counsel an opportunity to object to the instructions out of the hearing of the jury. The record of the trial, however, does not support this contention. Upon completing his substantive charge to the jury, the trial judge asked the attorneys to approach the bench. After a brief bench conference, the judge announced that both sides were satisfied. The trial court then gave final instructions to the jury, and asked, "Is the State satisfied and [is] the defendant . . . satisfied?" The attorneys indicated that they were.

Defense counsel could simply have asked to approach the bench for the purpose of making an objection out of the presence or hearing of the jury. There is no statute or rule which obligates the trial judge to advise defense counsel to make such a request.

Furthermore, since defendant did not object to the instruction at trial and did not request an additional instruction, our review is limited to a review for plain error. *State v. Barton*, 335 N.C. 696, 705, 441 S.E.2d 295, 298 (1994). "Only in a 'rare case' will an improper instruction 'justify reversal of a criminal conviction when no objection has been made in the trial court.'" *State v. Weathers*, 339 N.C. 441, 454, 451 S.E.2d 266, 273 (1994) (quoting *State v. Odom*, 307 N.C. 655, 661, 300 S.E.2d 375, 378 (1983)).

In the instant case, the State presented overwhelming evidence, including defendant's own signed confession, showing defendant's guilt. This Court has repeatedly stated "that a jury charge must be construed contextually and that isolated portions of it will not be held prejudicial when the charge as a whole is correct." *State v. Price*, 326 N.C. 56, 89, 388 S.E.2d 84, 103, *sentence vacated on other grounds*, 498 U.S. 802, 112 L. Ed. 2d 7 (1990). Here, the errors cited by defendant did not alter the essential meaning or intent of the pattern jury instructions. We have held that "'a mere slip of the tongue by the trial judge in his charge to the jury . . . will not constitute prejudicial error when it is apparent from the record that the jury was not misled thereby.'" *State v. Herring*, 338 N.C. 271, 279, 449 S.E.2d 183, 188 (1994) (quoting *State v. Simpson*, 303 N.C. 439, 450, 279 S.E.2d 542, 549 (1981)). We conclude that the instructions did not confuse the jury and that defendant is not entitled to relief under the plain error standard. Accordingly, we reject defendant's fifth and final argument.

For the foregoing reasons, we conclude that defendant received a fair trial, free of prejudicial error.

NO ERROR.