NO. COA13-1081

NORTH CAROLINA COURT OF APPEALS

Filed: 3 June 2014

STATE OF NORTH CAROLINA

v.

Wake County
Nos. 12 CRS 215921, 215922

ANTONIO NEAL GRAY

Appeal by defendant from judgments entered 5 April 2013 by Judge G. Wayne Abernathy in Wake County Superior Court. Heard in the Court of Appeals 19 February 2014.

> *Attorney General Roy Cooper, by Assistant Attorney General Richard G. Sowerby, for the State.*
>
> *McCotter Ashton, P.A., by Rudolph A. Ashton, III, for defendant-appellant.*

McCULLOUGH, Judge.

Antonio Neal Gray ("defendant") appeals from judgments entered upon his convictions for attempted robbery with a dangerous weapon, conspiracy to commit robbery with a dangerous weapon, and first degree burglary. For the following reasons, we find no error.

## I. Background

On 16 July 2012, defendant was arrested pursuant to warrants finding probable cause to believe defendant committed

the following offenses on 11 July 2012: two counts of attempted robbery with a dangerous weapon, one count of conspiracy to commit robbery with a dangerous weapon, and one count of first degree burglary. On 11 September 2012 a Wake County Grand Jury indicted defendant on the charges in case numbers 12 CRS 215921 and 215922. Defendant pled not guilty and his cases came on for trial in Wake County Superior Court before the Honorable G. Wayne Abernathy on 3 April 2013.

At trial the State's evidence tended to show the following: Isai Ntirenganya was a car dealer and a club promoter in Raleigh. Through his role as a promoter, Mr. Ntirenganya met Alneisa McKoy, who expressed interest in doing some promotion work. On the evening of 11 July 2012, Mr. Ntirenganya met up with Ms. McKoy and her friend, Allison Smith, at a sweepstakes parlor and took them to his friend's home in a trailer park off New Bern Avenue to talk about promotion work. Mr. Ntirenganya's friend, Kory Clark, was the only one home at the time.

Mr. Ntirenganya and Mr. Clark both testified that they and the two women were just hanging out, talking about promotion opportunities, drinking, and smoking marijuana. Mr. Ntirenganya and Mr. Clark recalled that during this time, Ms. McKoy and Ms. Smith were on their phones texting, were giggling and whispering

to each other, and were back and forth to the bathroom numerous times. Mr. Clark found their behavior suspicious.

At some point, Mr. Clark left the trailer to buy beer and cigarettes from a nearby convenience store. The women wanted to go with Mr. Clark and leave Mr. Ntirenganya by himself, but Mr. Clark left without them. When Mr. Clark returned several minutes later, he locked the door behind him.

Shortly thereafter, Mr. Ntirenganya and Ms. McKoy went to a back room in the trailer to talk. At that time, two men burst through the door that Mr. Clark had locked upon his return from the convenience store. Mr. Ntirenganya testified that someone jumped on his back and they tumbled to the floor. Mr. Ntirenganya recalled someone instructing him to "[g]et on the ground[]" and a female screaming "[s]omebody got a gun." The man that jumped on Mr. Ntirenganya's back was smaller than Mr. Ntirenganya and Mr. Ntirenganya was able to wrestle away from him and flee the trailer.

Mr. Clark testified that he heard the commotion and fled the trailer through another door. Mr. Clark did not see the intruders.

Both Mr. Ntirenganya and Mr. Clark indicated that nothing appeared to be missing from the trailer following the attempted

robbery. Mr. Ntirenganya's wallet and keys, which were on top of cabinets near the door, appeared undisturbed.

In addition to Mr. Ntirenganya and Mr. Clark, Ms. Smith and Ms. McKoy testified at trial. Their testimony revealed that they planned to rob Mr. Ntirenganya with James Diaz and defendant, who they identified as the intruders. At the time, Ms. Smith was in a relationship with Mr. Diaz and Ms. McKoy was in a relationship with defendant. Although defendant did not initially want to take part in the robbery, he went along with the plan. Ms. Smith and Ms. McKoy each described the plan in detail and testified that they were communicating with Mr. Diaz and defendant through text messages to give directions to the trailer, to inform them how many people were in the trailer, and to let them know that the door to the trailer was unlocked. These text message conversations were admitted into evidence at trial.

At the close of the State's evidence, defendant moved to dismiss the charges. The trial court allowed defendant's motion as to count two in case number 12 CRS 215921, attempted robbery with a dangerous weapon from the person of Mr. Clark, and denied the motion as to the remaining charges. Defendant did not put on any evidence and the case was given to the jury.

On 5 April 2013, the jury returned verdicts finding defendant guilty of attempted robbery with a dangerous weapon, conspiracy to commit robbery with a dangerous weapon, and first degree burglary. The trial court then entered judgments sentencing defendant to a term of 23 to 40 months for conspiracy to commit robbery with a dangerous weapon and a consecutive term of 59 to 83 months imprisonment for attempted robbery with a dangerous weapon and first degree burglary, which were consolidated for judgment. Defendant gave notice of appeal in open court.

## II. Discussion

Defendant raises the following three issues on appeal: whether the trial court (1) erred in denying his motion to continue; (2) plainly erred in allowing testimony of a detective concerning his opinions, decisions, observations, and interpretation of text messages; and (3) erred in allowing the State to introduce text messages from Mr. Diaz's cell phone. We address each issue in order.

### Motion to Continue

The trial court granted defense counsel a twenty-four hour continuance on 2 April 2013. Then, as the State prepared to call defendant's case for trial on 3 April 2013, defense counsel

renewed his motion to continue asserting he needed additional time to prepare for trial following the late receipt of a statement by Ms. McKoy implicating Mr. Diaz as the possessor of the gun during the attempted robbery. Specifically, defense counsel argued he prepared for trial as if defendant possessed the gun during the attempted robbery and he needed extra time to prepare the defense following receipt of Ms. McKoy's statement, which defense counsel claimed changed the theory of the State's case against defendant to acting in concert.

The trial court rejected defendant's argument and denied the motion to continue. The trial court reasoned that Ms. McKoy's statement was duplicative, did not introduce any new actors or witnesses, and did not significantly change the State's case against defendant. The trial court explained that, under the law, it did not matter who possessed the gun; if one of the perpetrators possessed a gun, all perpetrators were guilty to the same extent. Additionally, the trial court noted it had already granted defendant a twenty-four hour continuance.

Now on appeal, defendant contends the trial court erred in denying his motion to continue. We disagree.

As this Court has recognized,

> "Ordinarily, a motion to continue is addressed to the discretion of the trial

court, and absent a gross abuse of that discretion, the trial court's ruling is not subject to review." *State v. Taylor*, 354 N.C. 28, 33, 550 S.E.2d 141, 146 (2001) (citing *State v. Searles*, 304 N.C. 149, 153, 282 S.E.2d 430, 433 (1981)). "'Continuances are not favored and the party seeking a continuance has the burden of showing sufficient grounds for it. The chief consideration is whether granting or denying a continuance will further substantial justice.'" *In re Humphrey*, 156 N.C. App. 533, 538, 577 S.E.2d 421, 425 (2003) (quoting *Doby v. Lowder*, 72 N.C. App. 22, 24, 324 S.E.2d 26, 28 (1984)). "However, if 'a motion to continue is based on a constitutional right, then the motion presents a question of law which is fully reviewable on appeal.'" *State v. Jones*, 342 N.C. 523, 530-31, 467 S.E.2d 12, 17 (1996) (quoting *State v. Covington*, 317 N.C. 127, 129, 343 S.E.2d 524, 526 (1986)).

*In re D.Q.W.*, 167 N.C. App. 38, 40-41, 604 S.E.2d 675, 676-77 (2004).

"To establish that the trial court's failure to give additional time to prepare constituted a constitutional violation, defendant must show 'how his case would have been better prepared had the continuance been granted or that he was materially prejudiced by the denial of his motion.' '[A] motion for a continuance should be supported by an affidavit showing sufficient grounds for the continuance.' '"[A] postponement is proper if there is a belief that material evidence will come to light and such belief is reasonably grounded on known facts."'"

*Id.* at 41, 604 S.E.2d at 677 (quoting *State v. McCullers*, 341 N.C. 19, 31-32, 460 S.E.2d 163, 170 (1995) (quoting *State v.*

*Covington*, 317 N.C. 127, 130, 343 S.E.2d 524, 526 (1986); *State v. Kuplen*, 316 N.C. 387, 403, 343 S.E.2d 793, 802 (1986); and *State v. Tolley*, 290 N.C. 349, 357, 226 S.E.2d 353, 362 (1976) (other citation omitted))).

In support of his argument that the trial court erred, defendant cites two cases, *State v. Smith*, 178 N.C. App. 134, 631 S.E.2d 34 (2006) and *State v. Pickard*, 107 N.C. App. 94, 418 S.E.2d 690 (1992), in which trial courts denied the respective defendants' motions for continuances. This Court subsequently affirmed the trial courts' decisions in both of those cases. *Smith*, 178 N.C. App. at 142-44, 631 S.E.2d at 39-41; *Pickard*, 107 N.C. App. at 100-01, 418 S.E.2d at 693-94. Defendant then argues a different result is warranted in this case because it is distinguishable from *Smith* and *Pickard*. Specifically, defendant repeats the argument made before the trial court that, while Ms. McKoy's statement is less inculpatory of defendant, the statement was prejudicial to defendant because it changed the theory of the case against him at the eleventh hour.

Although the present case may be distinguished from *Smith* and *Pickard*, we are not convinced that the trial court erred in denying defendant's motion to continue. We agree with the trial court that Ms. McKoy's statement did not significantly change

the case to defendant's prejudice so as to require additional time to prepare for trial beyond the twenty-four hour continuance already granted by the trial court. Thus, we hold the trial court did not abuse its discretion in denying defendant's motion to continue.

To the extent defendant argues the denial violated his constitutional rights, defendant was not prejudiced. As argued by the State, there is nothing in the record tending to show that the State implied it was proceeding to trial solely on the theory that defendant possessed the gun. In fact, defense counsel should not have been surprised by Ms. McKoy's statement. During defendant's bond hearing on 11 February 2013, months before trial, the State summarized the evidence against defendant. In that summary, the State indicated that Mr. Diaz possessed the gun during the attempted robbery. Defense counsel was present at the hearing.

Moreover, there was contradictory testimony elicited by the State at trial from which the jury could have determined defendant possessed the gun during the attempted robbery. Ms. Smith testified that defendant possessed the gun while Ms. McKoy testified that Mr. Diaz entered the trailer with the gun.

## Opinion Testimony

At trial, the State called Detective Snowden of the Raleigh Police Department to testify. The State then questioned Detective Snowden about text messages between the perpetrators on the night of the attempted robbery. Detective Snowden testified about three separate text message conversations: a conversation between Ms. McKoy and defendant, a conversation between Mr. Diaz and Ms. Smith, and a conversation between Mr. Diaz and Ms. McKoy.

When questioned about the text messages between Ms. McKoy and defendant, Detective Snowden stated "it was clear . . . that [Ms. McKoy] had assisted [defendant] with the plan and execution of the attempted robbery. And it looked like directions were given to [defendant's] cell phone and allowing access to the residence." Detective Snowden also testified that the address provided to defendant by Ms. McKoy in the text messages corresponded to the trailer where the attempted robbery took place and it appeared defendant was asking Ms. McKoy if the door to the trailer was open. When questioned about his observations of the text messages between Mr. Diaz and Ms. Smith, Detective Snowden responded that they appeared to illustrate "the actual time line [sic] of the attempted robbery, along with, [he] guess[ed], the escape of Ms. Smith." Detective Snowden stated

"[i]t was clear that [Ms. Smith] had helped her boyfriend, Mr. Diaz, plan and execute the attempted robbery." Detective Snowden further indicated that defendant's and Ms. McKoy's nicknames appeared in the text message conversation. When questioned about his observations of the third text message conversation between Ms. McKoy and Mr. Diaz, Detective Snowden stated, "it appeared that directions were being given, the doors were being asked to be unlocked, and then it seemed like they were trying to find Ms. Smith."

Detective Snowden then described his overall impression from the text messages as follows:

> Just looking at the text messages, again, like I said, it kind of gave a good timeline of what had occurred, that a robbery was being planned with Mr. Diaz and [defendant] involved, and that the girls were part of that robbery, and they were supposed to open a door. They were telling them how much money was there, how many people -- or how many victims might be there.
>
> Just -- all together, it just -- it kind of put everything in place as far as a robbery was going to be done, but, as described by the victims, it was botched, and nothing was gotten. And it seemed like, once Ms. Smith got lost, it also showed you they were trying to find her, you know, and direct her how to get to a certain spot to be picked up.

Defendant did not object to Detective Snowden's testimony at trial. Yet, now on appeal, defendant contends the trial

court plainly erred in allowing Detective Snowden to testify regarding his opinions and observations of the text messages. We disagree.

"In criminal cases, an issue that was not preserved by objection noted at trial and that is not deemed preserved by rule or law without any such action nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error." N.C. R. App. P. 10(a)(4) (2014).

> For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty. Moreover, because plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affect[s] the fairness, integrity or public reputation of judicial proceedings[.]

*State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (citations and quotation marks omitted).

Regardless of whether or not the admission of Detective Snowden's testimony concerning his opinion and observations from the text messages was error, given the overwhelming and uncontroverted evidence of defendant's guilt in the record, the

alleged error does not amount to plain error requiring a new trial.

## Text Messages

As referenced, at trial, the State introduced photographs of text messages between Mr. Diaz and Ms. Smith and between Mr. Diaz and Ms. McKoy that were found on Mr. Diaz's cell phone following his arrest. Defendant did not initially object to the admission of the photographs of the text messages and they were admitted into evidence as the State's exhibits ten and twelve. At the request of the State, Detective Snowden read the text messages photographed in exhibit ten aloud in open court. Defendant did not object. However, immediately after exhibit twelve was admitted and the State requested that Detective Snowden read the photographed text messages between Mr. Diaz and Ms. McKoy in open court, defense counsel asked to be heard and objected to the admission of exhibit twelve based on lack of authentication. After hearing arguments, the trial court overruled defendant's objection.

Defendant now contends the trial court erred in allowing the photographs of the text messages between Mr. Diaz and the two women to be admitted into evidence.

At the outset, we note defendant's objection was untimely as to the admission of exhibit ten. Therefore, defendant has not preserved the issue for appeal. *See* N.C. R. App. P. 10(a)(1) (2014) ("In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context."). Nevertheless, the following analysis for exhibit twelve applies equally to exhibit ten.

In support of his argument that there was inadequate authentication, defendant cites *State v. Taylor*, 178 N.C. App. 395, 632 S.E.2d 218 (2006). In *Taylor*, the State sought to admit printouts or transcripts of text messages sent to and from the victim's cell phone. *Id*. at 412, 632 S.E.2d at 230. In order to authenticate the text messages, the State called employees of the cell phone company to testify concerning how the company kept records of its customers' text messages and how they are retrieved. *Id*. at 413, 632 S.E.2d at 230. This court held the combination of the employee's testimony and the circumstantial evidence within the text messages was sufficient to authenticate the evidence. *Id*.

Defendant now argues the same type of testimony was needed in this case to authenticate the photographs of the text messages admitted as exhibit twelve. We disagree.

The North Carolina Rules of Evidence provide that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." N.C. Gen. Stat. § 8C-1, Rule 901(a) (2013). The rule further provides a nonexclusive list of ways to authenticate evidence, including "testimony of a witness with knowledge 'that a matter is what it is claimed to be.'" *Taylor*, 178 N.C. App. at 413, 632 S.E.2d at 230 (quoting N.C. Gen. Stat. § 8C-1, Rule 901(b)(1)).

In this case, Detective Snowden testified that he took pictures of text messages on Mr. Diaz's cell phone while searching the phone incident to Mr. Diaz's arrest. Detective Snowden then identified the photographs in exhibit twelve as screen shots of Mr. Diaz's cell phone and testified that they were in substantially the same condition as when he obtained them. Ms. McKoy, with whom Mr. Diaz was communicating in the text messages, also testified to the authenticity of exhibit twelve. Specifically, Ms. McKoy testified that she, Mr. Diaz,

Ms. Smith, and defendant had planned to rob Mr. Ntirenganya. The plan was that she and Ms. Smith would meet up with Mr. Ntirenganya and communicate with Mr. Diaz and defendant through text messages to let them know what was going on. Ms. McKoy testified that she sent text messages to Mr. Diaz and defendant telling them where the trailer was located, how many people were in the trailer, and that the door was open. Ms. McKoy then identified exhibit twelve as the text message conversation between her and Mr. Diaz. Ms. McKoy further stated exhibit twelve was an accurate representation of her text message conversation with Mr. Diaz.

We hold the testimony in this case by Detective Snowden, who recovered the text messages from Mr. Diaz's cell phone, and Ms. McKoy, with whom Mr. Diaz was communicating in the text messages illustrated in exhibit twelve, was sufficient to authenticate exhibit twelve. Thus, the trial court did not err in admitting the photographs into evidence.

### III. Conclusion

For the reasons discussed above, the trial court did not error in denying defendant's motion to continue or in allowing the photographs of the text messages into evidence at trial.

Additionally, the trial court did not plainly error in allowing the testimony of Detective Snowden.

No Error.

Judges HUNTER, Robert C., and GEER concur.